IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAR 29 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LESTER JON RUSTON,           §
    Plaintiff,              §
vs.                          §     Civil Action No. 06-0224 RMU
JUSTICE DEPARTMENT,          §
    Defendant,              §

### AFFIDAVIT OF LESTER JON RUSTON IN SUPPORT OF SPECIAL COUNSEL

My name is Lester Jon Ruston. I am the Plaintiff in the above numbered and styled cause of action. Plaintiff seeks records of a "mental health evaluation" by an alleged fraud named "Dr." Maureen Buriss, who has allegedly violated multiple Federal Laws, most notably Title 18 U.S.C. § 241, a conspiracy to two or more to violate the Plaintiff's Constitutional Right to due process, on record in U.S. v. Ruston, 3:04-CR-191-G in the Northern District of Texas, Dallas Division. Buriss is a lesbian, "forced" on the Plaintiff by an act of fraud by "former" Federal Public Defender, Richard David Goldman of the Dallas Federal Public Defender's Office (see Ruston v. Justice Department, 06-3094-CV-S-RED-P Western District of Missouri, Southern Division).

In support of request for "Special Counsel", due to obstruction of justice, the Affiant presents Exhibit "A" attached 9 pages. Said "evidence" clearly shows fraud by the Defendants, "motive" for allegation of obstruction of justice in this matter and request for "Special Counsel", pursuant to 5 U.S.C. § 552(a)(4)(B).

As clearly stated in Exhibit "A", the records provided by the B.O.P. and U.S. Marshal's shows that a 30 day "study" was completed 12-03-2004. This document is fraudulent. Said "study" had not even begun on 12-3-04, which is supported by Affiant's copy of this "cop-out" to the Warden and Psychology Department dated 12/9/04. Further, "Dr." Buriss own report clearly states that "extension of the due date was requested".

All Affiant's statutory rights pursuant to Title 18 U.S.C. §§ 4241 and 4242 were purposely violated by the Defendants to "Torture" the Affiant, in alleged criminal violation of Title 18 U.S.C. § 2340. Further, Affiant was actively "recruiting" for the U.S. Navy on a "volunteer" basis, and said false statements and false documents are obstructing this effort, in alleged criminal violation of Title 18 U.S.C. § 2388, further justification for "Special Counsel" to determine why the Defendants are obstructing justice and aiding and abetting, which is an alleged criminal violation of Title 18 U.S.C. § 2.

All allegations of "fact" contained herein are true and correct, to the best of Affiant's knowledge, and federal records enclosed, sworn to under penalty of law with Affiant's signature affixed, pursuant to Title 28 U.S.C. § 1746 and Rule 65 Fed.R.Civ.P.

Dated: 3-26-06                              _____ Lester Jon Ruston - Declarant

EXHIBIT 3:04-CR-191-G

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Psychology Department | DATE: 12/9/04 |
|---|---|
| FROM: Lester Jon Ruston | REGISTER NO.: #26834-177 |
| WORK ASSIGNMENT: n/a | UNIT: 6N |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I wish to request copies of all paperwork sent to you in my evaluation "committment". This is my 4th request. I have been here over the 90 days allowed by law for an evaluation under Title 18 § 4241. Title 18 § 4242 allows 45 days. Additionally, the paperwork I was given in Dallas, Texas showed Fort Worth Medical Facility to be the facility to which I was ordered. Why am I in the MDC-Los Angeles? I have a Title 28, Section 2241 Writ of Habeas Corpus filed in Dallas and in Los Angeles. The Judges handling these legal matters are going to ask you the same questions. I am not trying to be difficult. I know you are tightly budgeted and overworked! You may also know I know law very good. It is my contention that I am in this facility illegally. It is your duty to investigate this or you could be liable in litigation and charged with aiding and abetting under Title 18 § 2 U.S. Code. As I said, I don't fault the MDC-Los Angeles. I fault the U.S. Attorney in Dallas, Texas and the Attorney General in D.C.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

 cc-file Ruston v. Attorney General, et al Los Angeles District Court

Printed on Recycled Paper

```
   NCRTK              *         PUBLIC INFORMATION            *       01-26-2006
   PAGE 001           *            INMATE DATA                *        13:05:25
                                 AS OF 01-26-2006

REGNO..: 26834-177 NAME: RUSTON, LESTER JON

                         RESP OF: SPG / DESIGNATED, AT ASSIGNED FACIL
                         PHONE..: 417-862-7041   FAX: 417-837-1711
                                                 RACE/SEX...: WHITE / MALE
FBI NUMBER.: 184295P8                            DOB/AGE....: 09-17-1957 / 48
PROJ REL MT: HOSP/TREATMENT COMPLETED            PAR ELIG DT: N/A
PROJ REL DT: HOSTRT CMP                          PAR HEAR DT:
--------------------------- ADMIT/RELEASE HISTORY ---------------------------

FCL    ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP DATE/TIME

SPG    A-DES      DESIGNATED, AT ASSIGNED FACIL  05-26-2005 0939 CURRENT
B11    RELEASE    RELEASED FROM IN-TRANSIT FACL  05-26-2005 1039 05-26-2005 1039

B11    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-26-2005 0530 05-26-2005 1039

OKL    HLD REMOVE HOLDOVER REMOVED               05-26-2005 0430 05-26-2005 0430

OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED   05-20-2005 1045 05-26-2005 0430

B04    RELEASE    RELEASED FROM IN-TRANSIT FACL  05-20-2005 1145 05-20-2005 1145

B04    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-20-2005 0701 05-20-2005 1145

TEX    HLD REMOVE HOLDOVER REMOVED               05-20-2005 0601 05-20-2005 0601

TEX    A-HLD      HOLDOVER, TEMPORARILY HOUSED   05-19-2005 1439 05-20-2005 0601

B04    RELEASE    RELEASED FROM IN-TRANSIT FACL  05-19-2005 1539 05-19-2005 1539

B04    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-19-2005 1132 05-19-2005 1539

SEA    HLD REMOVE HOLDOVER REMOVED               05-19-2005 1032 05-19-2005 1032

SEA    A-HLD      HOLDOVER, TEMPORARILY HOUSED   04-14-2005 1416 05-19-2005 1032

B17    RELEASE    RELEASED FROM IN-TRANSIT FACL  04-14-2005 1516 04-14-2005 1516

B17    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-14-2005 0540 04-14-2005 1516

OKL    HLD REMOVE HOLDOVER REMOVED               04-14-2005 0440 04-14-2005 0440

OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED   04-08-2005 1820 04-14-2005 0440

A01    RELEASE    RELEASED FROM IN-TRANSIT FACL  04-08-2005 1920 04-08-2005 1920

A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-08-2005 1129 04-08-2005 1920

LOS    HLD REMOVE HOLDOVER REMOVED               04-08-2005 0829 04-08-2005 0829

LOS    A-HLD      HOLDOVER, TEMPORARILY HOUSED   12-03-2004 0737 04-08-2005 0829

LOS    STDY CMPLT STUDY AND OBS COMPLETED        12-03-2004 0735 12-03-2004 0737

LOS    A-DES      DESIGNATED, AT ASSIGNED FACIL  11-04-2004 1537 12-03-2004 0735
```

U.S. Department of Justice

Federal Bureau of Prisons

*Metropolitan Detention Center*

---

535 N. Alameda Street
Los Angeles, CA 90012

FORENSIC EVALUATION

**NAME:** Ruston, Lester Jon
**REGISTER NUMBER:** 26834-177
**DOCKET NUMBER:** 3:04-CR-191-G
**DATE OF REPORT:** March 14, 2005

## REFERRAL INFORMATION

In an order dated October 5, 2004, the Honorable A. Joe Fish, Chief United States District Court Judge for the Northern District of Texas requested an evaluation of Lester Jon Ruston for present competency to stand trial, pursuant to 18 U.S.C. Section 4241, and whether the defendant was sane at the time of the crime, pursuant to 18 U.S.C. Section 4242. Specifically, the order requests the examiner's evaluation and opinion as to whether defendant Lester Jon Ruston is suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to understand the nature and consequences of the court proceedings against him or to assist counsel properly in his defense, and whether he was responsible for his alleged behavior. The referral question is posed in regard to the defendant's current alleged offense of threatening a government official.

Due to the discrepancy between the date of the court order and Mr. Ruston's arrival at the Metropolitan Detention Center in Los Angeles (MDC-LA) on November 4, 2004, a request was submitted to the Court for the evaluation period to begin on the date of receipt of the court order. Due to unforeseen circumstances, and an unusually high volume of evaluation referrals, an extension of the due date was requested.

## IDENTIFYING INFORMATION

Lester Jon Ruston is a 47-year-old Caucasian male, who was arrested on May 22, 2004 in Carrollton, Texas, and charged with threatening a government official (Federal Magistrate Judge). Mr. Ruston reported that he was "moving around a lot," and living in inexpensive hotels in the Carrollton area. He stated that he frequently changed residences because "the politicians and judges want me dead." Mr. Ruston claimed that he worked as a private investigator and sold things at a flea market on the weekends.

NAME: Ruston, Lester Jon
REG. NO.: 26834-177
PAGE: 5

Mr. Ruston denied any current medical problems or treatment. As a child, he had two surgeries on his penis. He said that he was told the opening in his penis was too small, so he had surgeries in the first and fourth grades. He claimed that he thought the surgeries were unnecessary, and was angry about it.

Mr. Ruston has never voluntarily sought mental health treatment, and does not believe he is mentally ill. When asked about past symptoms, he described feeling angry. He claimed that he dealt with his anger through humor. He was court ordered to take medication in 2000, though he did not take it for long. He was hospitalized for two months in 1999 at Witchita Falls State Hospital for a mental health evaluation. Mr. Ruston stated that he was sent to the hospital "and held illegally because I was a witness to a crime by the school board." Mr. Ruston was also evaluated for competency and sanity by the Federal Bureau of Prisons, similar to the current evaluation, in June 2001. The evaluator opined that Mr. Ruston appeared to have a factual understanding of the legal proceedings and could assist in his defense, but that he was mentally ill at the time of the instant offense.

[handwritten margin note: FRAUD; NEVER BEEN "COURT" ORDERED TO TAKE MEDICATION]

[handwritten annotation: NEVER ADJUDICATED PURSUANT TO TITLE 18 SECTION 4247(d)]

Mr. Ruston reported that he has been arrested a total of 10 times. He described his various charges as telephone harassment, criminal trespassing, contempt of court, retaliation, stalking, and threatening a government official. Mr. Ruston claimed that he was convicted of telephone harassment, and served approximately 2.5 years in various jail facilities. He was given probation and had to participate in court-ordered therapy.

## INFORMATION FROM SUPPLEMENTAL SOURCES

LEGAL: The legal documents available for review consisted of the Court Order for a Mental Health Evaluation, dated October 1, 2004; reports by the Federal Bureau of Investigation (FBI), including phone transcript, dated May 20, 2004, and June 17, 2004; Mental Health Evaluation conducted by Dr. Jim Lloyd of Terrell State Hospital, dated January 23, 2001; Mental Health Evaluation conducted by Dr. Jim Womack of the Federal Bureau of Prisons, dated August 16, 2001; a Motion to Oppose Psychological Examination and a Motion to Dismiss and Replace Richard Goldman, written by the defendant, filed October 6, 2004. Although all of the available documents were reviewed in detail, for the sake of brevity and clarity, only summary information, as it pertains to the referral question, is provided herein.

The documents outline the criminal charges surrounding the arrest for threatening a Magistrate Judge. The documents include a summary of the interview conducted with Mr. Ruston after his arrest for the instant offense. He appears to have cooperated with the interview and provided information regarding past mental health evaluations and arrests. Mr. Ruston also made a number of comments that suggested the presence of a delusional system. For example, he stated that he believed the family of President George Bush was

NAME: Ruston, Lester Jon
REG. NO.: 26834-177
PAGE: 6

trying to kill him, and that he saw the "hit man" that they hired. The report continued with "Ruston claimed that he is a decedent of Scottish Royalty, specifically the Earl of Bruce. Ruston is planning to change his name to Robert David Bruce. Ruston stated that he plans to move to Scotland with his fiancé, Katie Couric." According to the report, he made a number of other statements that suggested the presence of paranoid and grandiose delusions. There were indications in the documents of Mr. Ruston suffering from confusion, delusions and involutary interference with mental functioning during the instant offense.

*[handwritten margin note: FRAUD, NEVER MET COURIC IN MY LIFE, DID NOT EVER STATE THIS!]*

**MENTAL HEALTH:** A mental health evaluation written by Dr. Jim Lloyd from Terrell State Hospital, dated January 23, 2001 was reviewed. Mr. Ruston was admitted to the hospital subsequent to his having threatened a judge. He was initially placed in another hospital where he required seclusion and emergency medications, before he was transferred to Terrell State Hospital. Mr. Ruston was hospitalized for a two week period. At the time of admission he presented with agitation, pressured speech, flight of ideas, paranoid and grandiose delusions, and poor insight. Over the course of the two weeks, he complied with the medication regimen and his functioning improved. Dr. Lloyd noted, "he seemed to be over his obsession with Bush and indicated an intention to let it go." He further noted "it was felt by both his treatment team and himself that he could be discharged with relative safety to both himself and to others." Another report from the same hospitalization noted, "he is noncompliant [with medication], has no motivation for treatment, patient has abused drugs and alcohol in the past, and has no insight into his illness." Mr. Ruston was diagnosed with Bipolar I Disorder, most recent episode Manic, with Psychotic Features.

Dr. Jim Womack from the Federal Medical Center in Fort Worth, Texas conducted a comprehensive mental health evaluation on Mr. Ruston, which was dated August 16, 2001. Mr. Ruston easily adapted to the daily routine of the institution and spent his time doing legal research, helping others with their cases, and writing letters. It was noted that "the defendant was an unreliable historian due to his grandiose and persecutory ideation." Furthermore, Dr. Womack noted, "when most of the allegations against the defendant were addressed with him, he found a way of discrediting the source as being connected to an organized strategy to discredit him." It was opined that Mr. Ruston did not suffer from a current mental disease or defect which would render him unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense. However, Dr. Womack contended that Mr. Ruston did suffer from a mental illness and was unable to appreciate the nature, quality, and wrongfulness of his behavior in regards to his charge of threatening a government official. Mr. Ruston was diagnosed with Delusional Disorder, Persecutory Type, with Grandiose Features, and, Alcohol Abuse, Early Full Remission, in a Controlled Environment.

*[handwritten margin note: FRAUD]*

*[handwritten margin note: "CRIMINAL" NOT GOVERNMENT OFFICIAL FRAUD]*

NAME: Ruston, Lester Jon
REG. NO.: 26834-177
PAGE: 7

**COLLATERAL CONTACT:** Mr. Ruston's attorney, Richard Goldman, Esq., was contacted for collateral information. Mr. Goldman had significant concerns about his client's mental health. He stated that he received numerous letters from Mr. Ruston which contain "incoherent, rambling, paranoid, and bizarre" content. Mr. Goldman stated that he has not interacted with Mr. Ruston in person since he was sent for the mental health evaluation before he was able to do so. It appears as though that Mr. Ruston views his attorney as a source of persecution and fraud, because he was involved in requesting a mental health evaluation from the Court.

[handwritten annotations: "FALSE →" pointing to "incoherent, rambling, paranoid, and bizarre"; "REFUSE TO PRODUCE THESE 'ALLEGED LETTERS'"]

## EVALUATION FINDINGS

**MENTAL STATUS:** Mr. Ruston is a Caucasian male of short stature and build, who appeared his stated age. He is 5'7" in height, and weighs 155 pounds. Mr. Ruston's hair was brown and his eyes were hazel. He was well groomed and appropriately dressed. He did not wear glasses or a hearing aid at the time of the interviews. He walked without assistance, and there were no signs of odd or bizarre behavior.

While in the institution, Mr. Ruston was housed in general population. The unit officer reported that he frequently socialized in the common area of the unit, and that he was respectful of others. He followed directions, maintained daily structured routines, and did not display any disruptive behavior. He helped numerous inmates with their legal cases while he was housed at MDC-LA. Mr. Ruston was cooperative and participated in the evaluation.

Mr. Ruston's eye contact during the interviews was good. His quantity of speech in response to questions was often excessive, and he engaged in spontaneous conversation. His response time to questions was generally fine. He did not exhibit any difficulty attending or concentrating. The rate and flow of his speech was normal, and the content was coherent, and goal directed. There was no suggestion of stuttering, articulation problems, or mimicking the examiner's speech.

Mr. Ruston's mood was euthymic, with varied affect. When Mr. Ruston talked about certain topics he became angry and animated. It took very little to trigger an angry response, though he was never physically threatening. He was oriented to time, place, person, and situation. His sensorium appeared unimpaired, and there was no apparent disturbance in memory, attention, or concentration. He stated that his appetite was adequate. He sometimes had difficulty falling asleep. Mr. Ruston denied experiencing psychotic symptoms such as delusions, hallucinations, loose associations, confusion, or confabulations. However, the content of his speech was often grandiose and paranoid. Mr. Ruston believed that there is an elaborate conspiracy to kill him, which stems from his complaints against a school district in Plano, Texas. There were no signs of a formal thought disorder from observations of

NAME: Ruston, Lester Jon
REG. NO.: 26834-177
PAGE: 9



**UNDERSTANDING OF CRIMINAL CHARGES, COURT PROCEEDINGS, AND ABILITY TO ASSIST COUNSEL:** Overall, Mr. Ruston demonstrated an adequate ability to understand the nature and consequences of the court proceedings against him, but an impaired ability to properly assist counsel in his defense. *[handwritten: COUNSEL HAD NEVER MET DEFENDANT]*

On the CAI, Mr. Ruston was able to articulate that he was charged with Threatening a Federal Official. He was aware that this is a felony charge. He understood the pleas of guilty, not guilty, and not guilty by reason of insanity. For instance, he stated that someone to plead not guilty means "I did not do what you accused me of," and the plea of guilty means "I did what I've been indicted for." He defined the plea of not guilty by reason of insanity as "I wasn't in my right frame of mine, I couldn't appreciate the nature of my actions, due to mental disease or defect." Mr. Ruston seemed to have a good grasp of the consequences for each of the pleas. He was aware that if someone is found not guilty, they would be released. He further stated "then I'd file a lawsuit for malicious prosecution." He was aware of what happen to someone if they were found not guilty by reason of insanity, and described it as "the person would be remanded to the custody of a mental facility, until it was determined that you're no longer a threat to society."

He was familiar with various other potential court motions, such as probation, which he defined as, "it is a period of time following your sentence where you report monthly to a P.O. and adhere to conditions of probation." He believed that certain rules such as "refraining from alcohol and drugs, and no contact with other criminals, UA's, and avoid contact with the alleged victim." would apply to him. In general, Mr. Ruston demonstrated an adequate understanding of court participants and related procedures. He understood the different roles of courtroom personnel such as the attorney, judge, jury, defendant, witnesses, and prosecuting attorney. He stated that the job of the defense attorney is "to present defenses side, help pick the jury, and provide defendant discovery," and the job of the prosecuting attorney is "to present the government's side, obey all orders, and enter into a plea." According to Mr. Ruston, a judge's role is "like a referee between both sides, to mediate, to make sure they're complying with federal procedures." Mr. Ruston also stated that the role of the defendant is to "to tell the truth and testify," He commented that he could help his lawyer by "present my knowledge and experience with doing defense law, to present all the pretrial motions, so I can resolve the matter." He stated that he believed a plea bargain was "where you make an agreement to plead guilty in exchange for concessions regarding the punishment." He understood the difference between a court trial and a jury trial.

*[handwritten left margin: NOT DONE BY RICHARD GOLDMAN, DESPITE "COURT" ORDER]*

*[handwritten right margin: A. JOE FISH HAS FAILED]*

Mr. Ruston was able to articulate an adequate understanding of appropriate courtroom behavior and the challenging of prosecution witnesses. For example when asked what he could do if someone told a lie about him on the stand, Mr. Ruston replied "have a pad and pen in hand and notate it; bring it to my lawyer's attention then question them in cross examination." He was able to discuss procedures such as only speaking out in the courtroom when asked by court

**NAME:** Ruston, Lester Jon
**REG. NO.:** 26834-177
**PAGE:** 10

personnel, obtaining permission from the court to move in the courtroom, and behaving in a calm and orderly manner. When asked what might happen to him if he spoke out of turn or moved around the courtroom, Mr. Ruston stated "the judge could hold you in contempt of court."

Mr. Ruston demonstrated an impaired ability to cooperate and assist counsel in his defense. He became extremely angry when talking about his lawyer and when asked if he had confidence in his attorney he shouted "absolutely not." Mr. Ruston stated that he attempted to dismiss his attorney in September 2004. He accused his attorney of not providing him with discovery, not coming to visit with him in person, and impeding his right to a speedy trial by ordering a mental health evaluation. Furthermore, Mr. Ruston claimed that Mr. Goldman is "covering up a murder for hire, because he has knowledge of it." It is likely that Mr. Ruston would have significant difficulty working with any attorney who handled the case in a manner with which he disagreed.   *IS SHE PSYCHIC?*

Mr. Ruston understood the concept of legal privilege which he defined as "my lawyer can't discuss anything with a third party." Mr. Ruston was certain he would be able to disclose the details of the instant offense to his attorney, as long as it someone other than Mr. Goldman. Mr. Ruston's ability to realistically appraise various defense strategies appeared limited, therefore his ability to make informed decisions based on these were also limited. He was able to attend and concentrate throughout the hours of evaluation. He was also able to discuss his behavior during the time period of the alleged offense, but demonstrated no insight into the paranoid and grandiose content of his speech.   *OPINION OF A LIAR*

**RESPONSIBILITY:** In general, Mr. Ruston's account of his history, along with information from the psychological tests and supplemental records, suggests a limited awareness of the nature, quality, or wrongfulness of his actions during the time period of the offense. His actions appeared to be primarily the result of a severe mental disorder.   *THE RESULT OF STALKING AND ATTEMPTED MURDER*

Mr. Ruston was asked to describe the time frame preceding the instant offense, which occurred on May 20, 2004. He stated that he was released from jail in May, 2003 and "life was hell." He claimed that he was arrested for assault with a deadly weapon, though the charges were reduced. Mr. Ruston reported that he was attempting to recover a car for a dealership and a man pulled a knife on him, so he defended himself with a knife. Mr. Ruston stated that he was "barely able to survive," when he was released from jail and that he did not have a car or any money. He reportedly went to his sister's house, and his brother ran out of the house and started threatening him. Mr. Ruston believes his siblings called his son, who paid the rent in a motel for Mr. Ruston. During this period of time, Mr. Ruston lived in between two inexpensive motels, and worked for a day labor agency. He rode a bicycle to work, where he performed tasks such as cleaning construction sites and "manual crap labor," according to Mr. Ruston

NAME: Ruston, Lester Jon
REG. NO.: 26834-177
PAGE: 15

## OPINION ON THE ISSUE OF COMPETENCY TO STAND TRIAL AND RESPONSIBILITY

Based on the available information, there is objective evidence to indicate that Mr. Ruston does suffer from a mental disorder that significantly impairs his present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense. The same mental disorder appears to have impacted his decision-making abilities and behaviors with regard to his current case. Mr. Ruston has the cognitive ability to understand the nature and consequences of the court proceedings against him. However, his fixed delusional beliefs are inextricably linked to the case against him, and his ability to cooperate with counsel and assist in his defense is seriously compromised. He lacks any insight that he suffers from a mental illness, and will most likely be unable to work with any attorney who challenges his belief system. With respect to the issue of criminal responsibility, it appears that Mr. Ruston has suffered from a Delusional Disorder for an extended period of time and that he was delusional during the period in question. It appears that his delusional beliefs directly contributed to the threatening phone call.

It is recommended that Mr. Ruston be committed to a federal medical center for treatment for restoration to competency pursuant to 18 U.S.C. Section 4241 (d). The four month commitment would allow for mental health treatment to assist Mr. Ruston in gaining improvement in his condition, and regaining his ability to fully participate in the court process, and determine whether or not he could be restored to competency in the foreseeable future. In addition, given the nature of the instant offense, his previous charges, and intense level of anger, it is strongly recommended that the staff at the federal medical center undertake a dangerousness evaluation.

*[signature]*
Maureen Burris, Ph.D.
Forensic Psychologist

Reviewed by:

*[signature]*
Ralph Ihle, Ph.D.
Chief and Forensic Psychologist