UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESTER J. RUSTON,           )
                            )
        Plaintiff,          )
                            )
    v.                      )    Civil Action No. 06-00224 (RMU)
                            )
DEPARTMENT OF JUSTICE,      )
                            )
        Defendant.          )
_____ )

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendant moves for summary judgment.  As grounds for this motion, defendant asserts that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  A memorandum of points and authorities, a statement of genuine issues of material fact not in dispute, and a proposed order granting the relief sought are attached hereto.

Plaintiff should take notice that any factual assertions contained in the declarations and other attachments in support of defendants' motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the defendants' attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that

the affiant is competent to testify to the
matters stated therein.  Sworn or certified
copies of all papers or parts thereof
referred to in an affidavit shall be attached
thereto or served therewith.  The court may
permit affidavits to be supplemented or
opposed by depositions, answers to
interrogatories, or further affidavits.  When
a motion for summary judgment is made and
supported as provided in this rule, an
adverse party may not rest upon the mere
allegations or denials of the adverse party's
pleading, but the adverse party's response,
by affidavits or as otherwise provided in
this rule, must set forth specific facts
showing that there is a genuine issue for
trial.  If the adverse party does not so
respond, summary judgment, if appropriate,
shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
        /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESTER J. RUSTON,              )
                              )
          Plaintiff,          )
                              )
     v.                       )     Civil Action No. 06-00224 (RMU)
                              )
DEPARTMENT OF JUSTICE,        )
                              )
          Defendant.          )
_____   )

DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, through its undersigned counsel, respectfully submits, in accordance with LCvR 56.1, the following statement of material facts as to which there is no genuine issue to be tried.

1.  Plaintiff is a federal prisoner.  Judicial notice of the electronic docket for the United States District Court for the Northern District of Texas, case of United States v. Lester J. Ruston, 3:04-cr-191-6.

2.  Plaintiff has been indicted for making threats against a United States Magistrate Judge, and he is currently in pretrial detainment so that issues relating to his mental competency can be addressed.  Id.

3.  On June 8, 2005, plaintiff filed FOIA request #05-6378 with the Bureau of Prisons ("BOP").  In this request, plaintiff sought copies of all documents relating to the psychological examination Dr. Maureen Burris conducted of him at the Metropolitan Detention Center in Los Angeles (MDC Los Angeles) beginning in November 2004 through April 2005.  The request

specifically sought all of Dr. Burris's handwritten notes, as well as her calendar showing the dates on which she interviewed him. The request further clarified that Ruston did not seek the examination report itself, but rather only Dr. Burris' hand-written notes and her calendar showing the dates she interviewed him. Finally, the plaintiff requested a copy of Dr. Burris' "Certificate to Practice Psychiatric Medicine." Attachment 1 to Exhibit A to the motion for summary judgment (hereafter referred to as the Kosiak declaration).

4. By letter dated June 8, 2005, the plaintiff was notified that his FOIA request was received and assigned to FOIA Request No. 05-06378. Attachment 2 to the Kosiak declaration.

5. By letter dated July 20, 2005, the plaintiff was notified that his request for a fee waiver had been denied as the two conditions provided in Title 28, Code of Federal Regulations, Section 16.11(k) were not met. Attachment 3 to the Kosiak declaration.

6. On July 26, 2006, the relevant BOP office received a letter from the plaintiff regarding his FOIA request. In this letter, the plaintiff referred to Dr. Burris as "a filthy, lying criminal" with reference to his psychological evaluation. In the letter, the plaintiff alleged all Bureau of Prisons psychologists "are being used as criminal co-conspirators by the Attorney General's Office." Kosiak declaration, ¶ 7, and attachment 4.

7.  By letter dated July 29, 2005, plaintiff was informed
that his request was pending due to a substantial backlog and
would be processed as soon as possible.  Attachment 5 to the
Kosiak declaration.

8.  On August 1, 2005, Bureau of Prisons FOIA/PA Section
received two letters written by the plaintiff, which were
directed to the Attorney General and the Deputy Attorney General.
In these letters, the plaintiff referred to his FOIA request and
claimed the Attorney General was "stonewalling" his request in
order to obstruct justice.  The letters reference various issues
involving members of the judiciary, members of Congress, Katie
Couric, and NBC, among others.  In the correspondence, the
plaintiff used derogatory terms in reference to several judges,
as well as in reference to the recipients of the letters.  As the
letters included reference to the plaintiff's FOIA request, they
were forwarded to the BOP for inclusion in our administrative
FOIA file.  The content and tone of these letters were consi-
dered, among other things, when determining that requested
records should not be released, under the authority of 5 U.S.C. §
552(b)(7)(F).  Kosiak declaration, ¶ 9, and attachment 6.

9.  By letter dated August 5, 2005, the plaintiff was
notified that the requested records had been located and
processed.  The plaintiff was informed that a portion of the
records were releasable to him.  Four documents were withheld in

full from release to him.  Attachment 7 to the Kosiak
declaration.

10.  By letter dated August 11, 2005, and received by the
Office of Information and Privacy (OIP) on August 19, 2005, the
plaintiff appealed the action of the BOP.  Attachment 8 to the
Kosiak declaration.

11.  By letter dated December 21, 2005, the plaintiff's
appeal to OIP was denied.  Attachment 9 to the Kosiak
declaration.

12.  Exemption 4 of the FOIA exempts from disclosure "trade
secrets and commercial or financial information obtained from a
person and privileged or confidential. . ."  5 U.S.C. §
552(b)(4).

13.  Document 1 as set forth in the Vaughn index consists of
copyrighted materials and raw data for two tests that were
purchased by the BOP from private companies that produce the test
formats and makes them available for sale to licensed
psychologists.  Each test bears a notation indicating that it is
copyrighted.  Kosiak declaration, ¶ 19.

14.  BOP has determined that release of these documents to
the public could adversely affect the copyright holder's poten-
tial market for these tests.  Kosiak declaration, ¶ 20.

15.  BOP is in the process of determining the position of
the copyright holders on the possible release of this informa-

4

tion.  The Court and plaintiff will be informed of their position, as soon as it is determined, which should be relatively shortly.  <u>See</u> Kosiak declaration, ¶¶ 21-24.

16.  The copyright holders have not been joined as persons needed for just adjudication under Fed. R. Civ. P. 19.  The docket of this case.

17.  Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), was properly asserted to protect from disclosure the notes taken by Dr. Maureen Burris in her psychological evaluation of plaintiff, notes that were predecisional in that they were taken prior to the preparation of the final agency decision, Dr. Burris's evaluation of plaintiff's competency in her report to the Court. Kosiak declaration, ¶ 26.

18.  Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), was properly asserted to protect from disclosure information in the withheld documents that would identify third-parties, since the release of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy and there is no countervailing public interest in the release of the requested information.  Kosiak declaration, ¶¶ 27-32.

19.  Exemption 7(F), 5 U.S.C. § 552(b)(7)(F), was properly asserted to protect from disclosure information that could endanger the safety of a BOP employee, Dr. Burris.  Kosiak

declaration, ¶ 15-17, and the <u>in camera</u> declaration that will be filed with the Court tomorrow, June 23.

20.  Upon receipt of plaintiff's FOIA request # 05-6378,  a search to determine the location of all documents relating to plaintiff's request was undertaken.  Dr. Burris reviewed her file regarding the psychological evaluation of the plaintiff.  She also reviewed her personal calendar.  Dr. Burris found six documents responsive to the plaintiff's request.  Two were released and four have been withheld pursuant to certain of the provisions of the FOIA.  An adequate search was conducted. Kosiak declaration at ¶ 14.

21.  It was determined that release of portions of the four documents was inappropriate.  Kosiak declaration, ¶ 34; and the nature of the exemptions claimed as to the withheld documents.

22.  For the reasons explained in the Kosiak declaration, ¶ 10, the Privacy Act does not apply to the records at issue in this case.

                              Respectfully submitted,

                              KENNETH L. WAINSTEIN, D.C. Bar #451058
                              United States Attorney

                              RUDOLPH CONTRERAS, DC Bar #434122
                              Assistant United States Attorney
                                      /S/
                              FRED E. HAYNES, DC Bar #165654
                              Assistant United States Attorney
                              555 4TH Street, N.W., Room E-4110
                              Washington, D.C. 20530
                              202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESTER J. RUSTON,              )
                              )
        Plaintiff,            )
                              )
    v.                        )    Civil Action No. 06-00224 (RMU)
                              )
DEPARTMENT OF JUSTICE,        )
                              )
        Defendant.            )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, a federal prisoner, filed a Freedom of Information Act ("FOIA") request for material related to the psychological evaluation of him by a Bureau of Prison's ("BOP") employee, Dr. Maureen Burris. Six documents were found that were responsive to the request. Two were released in full and four were withheld in full, based on BOP's assertion of several of the exemptions from release that are provided in the FOIA. This action challenges BOP's withholding of the four documents. (One of the documents actually consists of material relating to two psychological tests that were given to plaintiff.)

It should be noted that defendant is in the process of preparing a renewed motion to revoke plaintiff's in forma pauperis status. Defendant's previous motion to revoke plaintiff's IFP status was denied based on the Court's order initially granting such status. That order, which was issued prior to defendant's appearance in the case, accepted plaintiff's characterization of his status as being that of a "civil"

detainee.  This is incorrect.  Plaintiff has been indicted, arrested, and placed in pretrial detainment, pending resolution of issues related to his competency to stand trial.  He is, therefore, subject to the Prison Litigation Reform Act.

### Background

Plaintiff has been indicted for making threats against a United States Magistrate Judge, and he is currently in pretrial detainment so that issues relating to his mental competency can be addressed.  Judicial notice of the electronic docket for the United States District Court for the Northern District of Texas, case of <u>United States v. Lester J. Ruston</u>, 3:04-cr-191-6.  On June 8, 2005, plaintiff filed FOIA request #05-6378 with the Bureau of Prisons ("BOP").  In this request, plaintiff sought copies of all documents relating to the psychological examination Dr. Maureen Burris conducted of him at the Metropolitan Detention Center in Los Angeles (MDC Los Angeles) beginning in November 2004 through April 2005.  The request specifically sought all of Dr. Burris's handwritten notes, as well as her calendar showing the dates on which she interviewed him.  The request further clarified that Ruston did not seek the examination report itself, but only Dr. Burris's hand-written notes and her calendar showing the dates she interviewed him.  Finally, the plaintiff requested a copy of Dr. Burris's "Certificate to Practice Psychiatric

Medicine." Attachment 1 to  Exhibit A to the motion for summary judgment (hereafter referred to as the Kosiak declaration).

By letter dated June 8, 2005, plaintiff was notified that his FOIA request was received and assigned FOIA Request No. 05-06378.  Attachment 2 to the Kosiak declaration.  Plaintiff was notified, by letter dated July 20, 2005, that his request for a fee waiver had been denied as the two conditions provided in Title 28, Code of Federal Regulations, Section 16.11(k), were not met.  Attachment 3 to the Kosiak declaration.

On July 26, 2006, the relevant BOP office received a letter from the plaintiff regarding his FOIA request.  In this letter, the plaintiff referred to Dr. Burris as "a filthy, lying criminal" with reference to his psychological evaluation.  In the letter, the plaintiff alleged all Bureau of Prisons psychologists "are being used as criminal co-conspirators by the Attorney General's Office."  Kosiak declaration, ¶ 7, and attachment 4.

By letter dated July 29, 2005, plaintiff was informed that his request was pending, due to a substantial backlog, and would be processed as soon as possible.  Attachment 5 to the Kosiak declaration.  On August 1, 2005, BOP's FOIA/PA Section received two letters written by the plaintiff, which were directed to the Attorney General and the Deputy Attorney General.  In these letters, the plaintiff referred to his FOIA request and claimed the Attorney General was "stonewalling" his request in order to

obstruct justice.  The letters reference various issues involving members of the judiciary, members of Congress, Katie Couric, and NBC, among others.  In the correspondence, the plaintiff used derogatory terms in reference to several judges, as well as in reference to the recipients of the letters.  As the letters included reference to the plaintiff's FOIA request, they were forwarded to the BOP for inclusion in its administrative FOIA file.  The content and tone of these letters were considered, among other things, when determining that requested records should not be released, under the authority of 5 U.S.C. § 552(b)(7)(F).  Kosiak declaration, ¶ 9, and attachment 6.

By a letter dated August 5, 2005, the plaintiff was notified that the requested records had been located and processed.  The plaintiff was informed that a portion of the records were releasable to him.  Four documents were withheld in full from release to him.  Attachment 7 to the Kosiak declaration.

Plaintiff appealed the withholding of the four documents. Attachment 8 to the Kosiak declaration.  By a letter dated December 21, 2005, the plaintiff's appeal to OIP was denied. Attachment 9 to the Kosiak declaration.  This lawsuit was then filed.

## Argument

The <u>Vaughn</u> index identifies four documents that have been withheld in full from release to plaintiff.  The documents are

4

being withheld under four of the exemptions in the FOIA: Exemp-
tion 4, 5 U.S.C. § 552(b)(4) (trade secrets and confidential
commercial information); Exemption 5, 5 U.S.C. § 552(b)(5)
(deliberative process material); Exemption 7(C), 5 U.S.C. §
552(b)(7)(C)(exemption from disclosure where the release would
reasonably be expected to constitute an unwarranted invasion of
personal privacy); and Exemption 7(F), 5 U.S.C. § 552(b)(7)(F)
(withholding of information to protect the physical safety of
individuals).

<u>Exemption 4</u>

Exemption 4 of the FOIA exempts from disclosure "trade
secrets and commercial or financial information obtained from a
person and privileged or confidential. . ."  5 U.S.C. §
552(b)(4).  Document 1 in the <u>Vaughn</u> index consists of
copyrighted materials and raw data for two tests that were
purchased by the BOP from private companies that produce the test
formats and makes them available for sale to licensed psycho-
logists.  Each test bears a notation indicating that it is
copyrighted.  Kosiak declaration, ¶ 19.

BOP has determined that release of these documents to the
public might adversely affect the copyright holder's potential
market.  Companies which devise testing materials such as those
used by Dr. Burris in completing her forensic evaluation sell
those testing materials to commercial purchasers at whatever

5

price the market will bear.  Once they come into possession of an
agency, however, those documents become subject to FOIA, through
which knowledgeable potential customers can seek to obtain them
for nominal copying charges at a small fraction of their true
market value.  In such a situation, release under FOIA might
operate to diminish the company's market for its valuable
documents and thereby cause it direct economic loss.  Accord-
ingly, BOP has determined these copyrighted tests should not be
released until the copyright holder has been contacted and
provided the opportunity assert any objections to disclosure and
the grounds for such objections.  Kosiak declaration, ¶ 20.

     With regard to the Minnesota Multiphasic Personality
Inventory-2 (MMPI-2) test and score report, neither the copyright
holder, The Regents of the University of Minnesota, nor the
distributor, NCS Pearson, Inc., has published a statement
regarding their position on further release of their testing
materials.  Accordingly, the agency is contacting the copyright
holder and is awaiting a response.  At present, the agency has
determined that the MMPI-2 test and score report are not
releasable due to exemption 552(b)(7)(F).  Kosiak declaration, ¶
21.

     With regard to the WAIS-II test, the copyright holder,
Harcourt Assessment, formerly The Psychological Corporation, has

6

a section of their website devoted to legal terms and policies.
In this section, the corporation states:

> . . . As we have done for many years, we will continue
> to advise our customers that Harcourt Assessment's test
> instruments are trade secrets and their usefulness and
> value would be compromised if they were generally
> available to the public.  We have stated this position
> in correspondence, court cases, news articles and on
> our website for many years.  This position is also
> consistent with our longstanding practice of ensuring
> through our terms and conditions of use that all
> purchasers have the appropriate qualifications to
> administer and interpret the instruments being
> purchased and that such purchasers agree to maintain
> the confidentiality of the instruments. . . Harcourt
> asserts that strong measures are necessary to protect
> the validity of valuable testing instruments.  Harcourt
> believes that any copying of its tests constitutes
> copyright infringement.  Furthermore, disclosure of the
> tests threatens the ongoing validity of the test
> results, and therefore, the commercial value of the
> test."

*See* http://harcourtassessment.com/haiweb/Cultures/en-US/Footer/Legal+Policies.htm; Kosiak declaration, ¶ 22.

The Harcourt Assessment website explains that the testing
materials are sold only to qualified individuals who are bound by
the ethical standards of their profession to protect the inte-
grity of the materials by maintaining confidentiality of the
questions and answers.  Furthermore, the company states:

> Harcourt has a Qualifications Department consisting of
> two full-time employees whose sole function is to
> ensure that only qualified individuals have access to
> the test materials.  In addition, the Registration Form
> that all purchasers must complete and submit to
> Harcourt before purchasing contains a statement signed
> by the purchaser indicating that the purchaser is so
> qualified, and that all ethical rules will be observed
> by the purchaser.

See http://harcourtassessment.com/haiweb/Cultures/en-US/Footer/Legal+Policies.htm; Kosiak declaration, ¶ 23.

Finally, with regard to litigation, the Harcourt Assessment Company indicates:

> Harcourt does not wish to impede the progress of legal proceedings; however, we are equally unwilling to jeopardize the security and integrity of our test instruments by consenting to the release of copyrighted and confidential material to those not professionally qualified to obtain them.  Should litigation in which a psychologist is involved reach the stage where a court considers ordering the release of proprietary test materials to non-professionals such as counsel, we request that the court issue a protective order prohibiting parties from making copies of the materials; requiring that the materials be returned to the professional at the conclusion of the proceedings; and requiring that the materials not be publicly available as part of the record of the case, whether this is done by sealing part of the record or by not including the materials in the record at all.
>
> In addition, testimony regarding items, particularly that which makes clear the content of the items, should be sealed and again not be included in the record.  Pleadings and other documents filed by the parties should not, unless absolutely necessary, make specific reference to the content of or responses to any item, and any portion of any document that does so should be sealed.  Finally, we ask that the judge's opinion, including both findings of fact and conclusions of law, not include descriptions or quotations of the items or responses.  We think this is the minimum requirement to protect our copyright and other proprietary rights in the test, as well as the security and integrity of the test."

See http://harcourtassessment.com/haiweb/Cultures/en-US/Footer/Legal+Policies.htm; Kosiak declaration, ¶ 24.

The issue of the whether copyrighted material in an agency's possession is an agency record for purposes of the FOIA was

addressed by our Court of Appeals in <u>Weisberg v. Department of Justice</u>, 631 F.2d 824 (D.C. Cir. 1980).  The Court there concluded that the mere existence of a copyright did not, by itself, render FOIA inapplicable, but it also concluded that the District Court had the obligation of joining the copyright holders under Fed. R. Civ. P. 19, as parties that were needed to be joined for a just adjudication of the case.  Defendant suggests that the Court reserve its decision on Exemption 4, in that the documents subject to Exemption 4 are also subject to Exemption 7(F).  Granting the government's motion for summary judgment based on Exemption 7(F) would obviate the need for the Court to resolve the Exemption 4 claim.

<u>Exemption 5</u>

Exemption 5 protects from disclosure those documents that would not be available by law to a party in ligation with the agency.  The Courts have construed this language to exempt from disclosure under the FOIA those documents that are normally privileged in the civil discovery context.  <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149 (1975).  One of those privileges is the deliberative process privilege, which protects from disclosure predecisional agency documents that are part of the agency's deliberative process.  <u>Id.</u>, at 151.  In this case, defendant has asserted the deliberative process privilege to protect from disclosure the notes taken by Dr. Burris during her

interviews with defendant, notes that were used in the prepara-

tion of the final agency decision, her report to the District

Court for the Northern District of Texas concerning plaintiff's

competency to stand trial.  Such predecisional notes are subject

to the deliberative process privilege.  Judicial Watch of

Florida, Inc. v. United States Department of Justice, 102 F.Supp.

2d 6 (D.D.C. 2000).  Dr. Burris's notes were therefore properly

withheld under the deliberative process privilege.

### Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure

information compiled for law enforcement purposes when disclosure

"could reasonably be expected to constitute an unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "[T]he

term 'law enforcement purpose' is not limited to criminal

investigations but can also include civil investigations and

proceedings in its scope."  Mittleman v. Office of Personnel

Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied,

519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420

n.32 (D.C. Cir. 1982).  When, however, a criminal law enforcement

agency invokes Exemption 7, it "warrants greater deference than

do like claims by other agencies."  Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673

F.2d at 418.  A criminal law enforcement agency must simply show

that "the nexus between the agency's activity . . . and its law

10

enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  <u>Keys</u>, 830 F.2d at 340, quoting <u>Pratt</u>, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  <u>See</u>, <u>e.g.</u>, <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' <u>Department of Air Force v. Rose</u>, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested."  <u>Reporter's Committee</u>, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  <u>Id</u>. at 775.  That public interest is to "shed[] light on an

agency's performance of its statutory duties." Id. at 772.  The
plaintiff bears the burden of establishing that the "public
interest in disclosure is both significant and compelling in
order to overcome legitimate privacy interests." Perrone v. FBI,
908 F.Supp. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v.
Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

    Significantly, it is the "interest of the general public and
not that of the private litigant" that matters.  Brown v. FBI,
658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest
relevant for purposes of Exemption 7(C) is one that focuses on
'the citizens' right to be informed about what their government
is up to.'"  Davis v. Department of Justice, 968 F.2d 1276, 1282
(D.C .Cir.1992) (quoting Reporters Committee, 489 U.S. at 773)
(internal quotation marks omitted).

    The privacy interests of third parties mentioned in law
enforcement files are  "substantial," while "[t]he public
interest in disclosure [of third-party identities] is not just
less substantial, it is insubstantial." SafeCard Services, Inc.
v. SEC, 926 F.2d 1197, 1205 (D.C.Cir.1991).  Our court of appeals
has held "categorically" that "unless access to names and
addresses of private individuals appearing in files within the
ambit of Exemption 7(C) is necessary in order to confirm or
refute compelling evidence that the agency is engaged in illegal

activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Here, the agency has properly asserted Exemption 7(C) to protect from disclosure the identity of third-party individuals, the release of which could subject them to an unwarranted invasion of personal privacy. BOP determined that there was no public interest in the release of the requested information nor any interest which would counterbalance the individual's privacy in the information withheld under Exemption 7(C). There is no public interest to be served by the release of the requested information, because it would not shed light on the agency's performance of its statutory duties, or on the operations and activities of the government. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989).

Under traditional Exemption 7(C) analysis, once a privacy interest has been identified and its magnitude has been assessed, it is balanced against the magnitude any public interest to be served by disclosure. See Schiffer v. FBI, 78 F.3d 1405, 1410 (9ᵗʰ Cir. 1996) (explaining once agency shows that privacy interest exists court must balance against public interest in disclosure); Computer Professionals for Social Responsibility v. United States Secret Service, 72 F. 3d 897, 904 (D.C. Cir. 1996) (finding after privacy interest found court must identify public

interest to be served by disclosure); <u>Massey v. FBI</u>, 3 F.3d 620, 624-25 (2nd Cir. 1993) (holding once agency establishes that privacy interest exists that interest must be balanced against the value of information in furthering the FOIA's disclosure objectives); <u>Church of Scientology  v. IRS</u>, 995 F.2d 916, 921 (9th Cir. 1993) (remanding case because district court failed to determine whether public interest in disclosure outweighed privacy concerns).  Here, there is no public interest to weigh against the privacy interests.

<u>Exemption 7(F)</u>

Exemption 7(F), 5 U.S.C. § 552(b)(7)(F), was properly asserted to protect from disclosure information that could endanger the safety of a BOP employee.  Kosiak declaration, ¶¶ 16-17, and the <u>in camera</u> declaration that will be filed with the Court on June 23, 2006.  The filing of an <u>in camera</u> declaration, while disfavored, is appropriate were the public filing of the declaration would result in the harm that is sought to be protected by the <u>in camera</u> filing.  <u>See</u>, <u>e.g.</u>, <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 580-81 (D.C.Cir. 1996):

> Whereas the use of in camera review is generally
> encouraged, the use of in camera affidavits has
> generally been disfavored. Case law in this Circuit is
> clear that when a district court uses an in camera
> affidavit, it must both make its reasons for doing so
> clear and make as much as possible of the in camera
> submission available to the opposing party. Lykins v.
> United States Department of Justice, 725 F.2d 1455,

14

1465 (D.C.Cir.1984). These procedures ensure that the use of such affidavits has the smallest possible negative impact on the effective functioning of the adversarial system. Id.

In this case, the in camera declaration is being used because the release of the information in it would defeat the purpose of Exemption 7(F): it would subject the agency employee to the danger to safety that the exemption is designed to protect against.

### Adequacy Of Search And Segregability

Upon receipt of plaintiff's FOIA request # 05-6378, a search to determine the location of all documents relating to plaintiff's request was undertaken. Dr. Burris reviewed her file regarding the psychological evaluation of the plaintiff. She also reviewed her personal calendar. Dr. Burris found six documents responsive to the plaintiff's request. Two were released and four have been withheld pursuant to certain of the provisions of the FOIA. An adequate search was conducted. Kosiak declaration, at ¶ 14. Additionally, an analysis was conducted to determine whether parts of the withheld documents could be released, and it was determined that, given the exemptions asserted, none of the material could be released. Kosiak declarataion, at ¶ 34.

### Conclusion

For the reasons set forth above, summary judgment should be

15

granted to defendant.

                            Respectfully submitted,

                            KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
                /S/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4TH Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESTER J. RUSTON,            )
                            )
          Plaintiff,        )
                            )
     v.                     )     Civil Action No. 06-00224 (RMU)
                            )
DEPARTMENT OF JUSTICE,      )
                            )
          Defendant.        )
_____ )

<u>ORDER</u>

UPON CONSIDERATION of defendant's motion for summary judgment and the response thereto, it is this _____ day of _____, 2006,

ORDERED that defendants' motion for summary judgment is hereby granted; and it is further

ORDERED that this case is dismissed with prejudice from the docket of this Court.  This is a final, appealable order.

UNITED STATES DISTRICT JUDGE

Copies to plaintiff and counsel for defendant

17

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing

Motion For Summary Judgment to be served by first class mail,

postage prepaid, this 22nd day of June, 2006, on

Lester J. Ruston
# 26834-177
P.O. Box 4000
Springfield, Missouri 65801

/s/
Fred E. Haynes, D.C. Bar # 165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 514-7201