### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LESTER JON RUSTON, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 06-0224 (RMU) |
| | : | | |
| DEPARTMENT OF JUSTICE, | : | Document No.: | 36 |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM  OPINION

#### GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

### I.  BACKGROUND

In a request submitted to the Federal Bureau of Prisons ("BOP") under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff sought:

> all documents in the possession of the B.O.P. regarding a
> psychological examination of [the plaintiff] by a B.O.P. staff
> Psychologist named Dr. Maureen [Burris] of the MDC-Los Angeles,
> which occurred beginning in November of 2004 through April of
> 2005.

Mem. of P.& A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. A ("Kosiak Decl.")

¶ 4 & Attach. 1 (June 2, 2005 FOIA Request Letter, assigned Request No. 2005-06378).  Under

FOIA Exemptions 4, 5, 7(C), and 7(F), BOP withheld in full four documents, one of which

contained copyrighted material.[1]  *See* Kosiak Decl. ¶¶ 10, 14, 19.  That document (*In Camera*

Exhibit 1) was described as "the raw data obtained by BOP forensic psychologist during an

interview with the plaintiff to assist in her determination of his competency to stand trial."

---

[1]    The defendant submitted these four documents *in camera* pursuant to the Court's
January 8, 2007 Order.  *See* Notice of *In Camera* Filing of Documents [#32].  The Court will
refer to the documents as *In Camera* Exhibits 1-4.

Kosiak Decl., *Vaughn* Index at 1.  BOP determined that, under FOIA Exemption 4, "these copyrighted tests should not be released until the copyright holder has been contacted[] and provided the opportunity to assert any objections to disclosure and the grounds for such objections."  Kosiak Decl. ¶ 20.  In the alternative, the defendant suggested that the Court first determine whether these records were protected under FOIA Exemption 7(F) to obviate the need to determine the applicability of Exemption 4.  *See* Def.'s Mot. at 9; Notice of *In Camera* Filing of Documents at 1.

The Court concluded that the defendant neither justified the withholding in full of the four documents under Exemption 7(F) nor the withholding of Dr. Burris' handwritten notes (*In Camera* Exhibits 2-4) under Exemption 5.  *Ruston v. Dep't of Justice*, No. 06-0224, 2007 WL 809698, at *6 (D.D.C. Mar. 15, 2007).  The only information properly redacted were the names of the third parties mentioned in  *In Camera* Exhibits 2-4.  *Id.* at *5.  Finally, the Court denied without prejudice the defendant's motion for summary judgment with respect to the copyrighted test materials (*In Camera* Exhibit 1) so that the defendant had an opportunity to ascertain the copyright holders' positions on disclosure.  *Id.* at *3.

## II. ANALYSIS

### A.  Summary Judgment Standard

The court grants a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in

2

the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## B. Exemption 4

Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The defendant treats these psychological assessment materials as agency records for purposes of the FOIA and, relying on declarations submitted on behalf of the publishers of these materials, the defendant maintains that portions of *In Camera* Exhibit 1 are exempt from disclosure under FOIA's Exemption 4. *See* Mem. of P.& A. in Supp. of Def.'s Renewed Mot. for Summ. J. ("Def.'s Renewed Mot.") at 3-4.

*In Camera* Exhibit 1 includes "a four page *Wechsler Adult Intelligence Scale® – Third*

*Edition (WAIS®-III)* Summary Report followed by the actual protocol, which is a fourteen page

document." Def.'s Renewed Mot., Ex. A ("Cayton Decl.") ¶ 2.[2]  The WAIS-III, published by

Harcourt Assessment, Inc., is "a clinical test instrument used by psychologists to assess an

individual's cognitive functioning." *Id.* ¶ 3.  It contains "one highly researched set of test items

intended to be used for more than ten (10) years." *Id.*  Test questions, answers, manuals and

related materials are "highly confidential, proprietary trade secrets" which the publisher seeks "to

protect from disclosure beyond what is absolutely necessary for the purpose of administering the

tests." *Id.*  To this end, the publisher ensures that employees working on these secure materials

sign confidentiality agreements and that the materials are registered under a special procedure to

avoid public disclosure of the contents. *Id.*  In addition, these assessment materials "are sold

only to qualified individuals who are bound by the ethical standards of their profession to protect

the integrity of the materials by maintaining the confidentiality of the test items and answers."

*Id.* ¶ 4.

      Disclosure of the contents of the WAIS-III has two likely results.  First, public disclosure

of the test questions and answers "can severely compromise the validity of the test and, therefore,

its societal usefulness and [its] commercial value as an assessment tool for psychologists and

other assessment professionals worldwide." Cayton Decl. ¶ 3.  An individual with advance

knowledge of test questions and answers "enables both higher and (intentional) lower scores than

would be expected from persons of similar cognitive ability without such advance knowledge."

*Id.*  Second, disclosure of these materials harms Harcourt Assessment, Inc.'s business and

---

[2]    Tommie Cayton, Ph.D., a licensed psychologist, is the Senior Director of
Psychological Test Development for Harcourt Assessment, Inc.  Cayton Decl. ¶ 1.

proprietary interests. *See id.* ¶ 6. It has spent millions of dollars in researching and developing the WAIS-III and intends to use them for several more years. *Id.* Disclosure of "any actual test content is likely to damage the value of that investment and hasten the need to incur it again." *Id.*

Although Harcourt Assessment, Inc. does not object to the disclosure of the WAIS-III four-page summary report, it maintains that the 14-page test protocol should not be released to plaintiff for the reasons set forth above. Cayton Decl. ¶ 7.

*In Camera* Exhibit 1 also includes "a seventeen (17) page MMPI-2™ (Minnesota Multiphasic Personality Inventory-2) Extended Score Report followed by a two (2) page MMPI-2 bubble format answer sheet consisting of test instructions and completed bubble format answer sheet for the [567] questions included in the MMPI-2 test." Def.'s Renewed Mot., Ex. B ("Daniel Decl.") ¶ 2.[3] The MMPI-2 is a "clinical test of adult psychopathology used by psychologists to inform their diagnosis of mental disorders and selection of appropriate treatment methods," and its "instruments consist[] of a single highly researched set of items (questions) intended to be used for more than ten (10) years." Daniel Decl. ¶ 3. The MMPI-2 Extended Score Report is "computer generated in response to the information gathered on the MMPI-2 bubble-format answer sheet." *Id.* ¶ 4. It contains "critical items," which are described as "individual test questions whose content has been judged to be indicative of serious psychopathology when answered in the scored or deviant direction." *Id.* "Advance knowledge of test items affects the validity and reliability of the test for the person to whom [it] is administered as well as persons to whom the test might be administered in the future." *Id.* ¶ 5. If

---

[3]    Mark Daniel, Ph.D., a psychologist, is the Director of Psychometric Development for Pearson Assessments. Daniel Decl. ¶ 1.

an individual can identify the critical items and their scored or deviant direction, one might lose or invalidate valuable diagnostic information.  *Id.*  Accordingly, defendant asserts that dissemination of the MMPI-2 materials poses "a very real risk to the security, validity and future usefulness of the test and the commercial value of the test as an assessment tool for psychologists and other assessment professionals worldwide."  *Id*.

Pearson Assessments is the exclusive licensee of the MMPI-2 Extended Score Report and answer sheets on behalf of the publisher, the University of Minnesota.  Daniel Decl. ¶ 3.  The MMPI-2 materials "are considered highly confidential, proprietary, trade secrets which Pearson takes every precaution to protect from disclosure beyond what is necessary for the administration of the tests."  *Id.* ¶ 6.  They are made available to qualified professionals whose standards of ethics require them to protect the integrity of the materials by maintaining their confidentiality. *Id.*  Moreover, development of the test materials cost over one million dollars and are intended for use for many more years.  *Id.* ¶ 8.  Their public disclosure is likely to damage the value of investments made by Pearson and the University of Minnesota and "the viability of future editions" of the test.  *Id.*

While Pearson Assessments "does not object to the disclosure to the Plaintiff of the bubble form answer sheet," it maintains that "the entire content of the MMPI-2 Extended Score Report should not be produced."  Daniel Decl. ¶ 9.

Plaintiff offers no meaningful opposition to defendant's showing that the WAIS-III and MMPI-2 materials are protected under FOIA's Exemption 4.  *See generally* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Renewed).

Because the court agrees with the defendant's arguments, the Count concludes that the

WAIS-III and MMPI-2 materials at issue in this case are agency records for purposes of the
FOIA and that the test materials included in *In Camera* Exhibit 1 fall within the scope of FOIA
Exemption 4.  Therefore, the WAIS-III 14-page test protocol and the MMPI-2 Extended Score
Report properly are withheld in full.

### C.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable
information must be released after deleting the exempt portions, unless the non-exempt portions
are inextricably intertwined with exempt portions.  *Trans-Pacific Policing Agreement v. United
States Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  Here, the
defendant has established that the names of third parties mentioned the records at issue (*In
Camera* Exhibits 2-4) properly are withheld under FOIA Exemption 7(C).  In addition, based on
the declarations submitted on behalf of Harcourt Assessment, Inc. and Pearson Assessments, the
defendant may withhold portions of the psychological test materials (*In Camera* Exhibit 1) under
FOIA Exemption 4.  However, the defendant has failed to justify the withholding of any
information (*In Camera* Exhibits 1-4) under FOIA Exemption 7(F) and of Dr. Burris'
handwritten notes (*In Camera* Exhibits 2-4) under FOIA Exemption 5.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants the defendant's renewed motion for summary judgment and directs the defendant in a manner consistent with this Memorandum Opinion in an Order issued separately and contemporaneously on this 9th day of November, 2007.


RICARDO M. URBINA
United States District Judge